Your Honors, Bob Platt for Mr. Koyomejian. Louis Van Dyke stated the only title in our democracy superior to that of president is the title of citizen. Mr. Koyomejian wished for that title. His three children and wife are all U.S. citizens, and but for an eight-year delay on the part of the INS, he would be too. It is for this reason the government should be stopped from deporting Mr. Koyomejian back to Syria, where he faces torture and or imprisonment at best. Counsel, assuming that your estoppel argument is not legally cognizable or is not persuasive to us, to me this is very much a standard of review case, and one could come to the factual conclusion that you have come to, which is that he faces the strong possibility of torture. But why isn't it also possible to read this record the way the BIA read it, and that is to not require a conclusion that he would be tortured? Well, Your Honor, at the hearing, Dr. Dikmejian came from USC. His curriculum vitates part of the administrative record. He's one of the foremost authorities on the Middle East, and he said he had a 99% chance of being tortured or imprisoned before he left the airport in Damascus. If they figured out he was there, but there was also testimony that there was not, that the government wouldn't say what flight he was going to be on, and leaving open the possibility that he would just arrive and leave and all would be... Right. According to Dr. Dikmejian's testimony, there is no doubt that they would know who he is. This was a very well-written-about case. Twenty-plus years ago, so are there a lot of inferences that would have to be drawn in your favor? Well, when you walk into the Syrian embassy and ask for a travel document for somebody who's been in the United States for 29 years, the expectation is if they don't ask the government and if the government doesn't wish to tell them, as soon as Mr. Koyamidjian arrives in Syria, that fact will become known. I don't think that there is any doubt that the government of Syria will know who he is and why he's being returned. I mean, a person doesn't go back to Syria after 28 years with the U.S. asking for travel documents without him being deported. Well, they did. The testimony by the DHS officer was that they would know he was being deported, is my understanding. And they would ask why? He didn't seem... The officer had spoken generalities, but he didn't speak about Syria in particular, except by some conversation about somebody he'd spoken to once, but that was about it. And Syria has probably one of the worst human rights records that we're aware of. But even with respect to what he was testifying about, I mean, he said, for example, certain countries require us to escort people. And he didn't think it was Syria, but he wasn't sure about that because he'd never been to Syria. Correct. So he really didn't have any specific testimony about that, except sometimes it happens, sometimes it doesn't happen, and he didn't really know for sure about Syria. That was correct. But the expert also didn't know about escorting. As I recall, there was no testimony from the expert that a person is escorted back to Syria. Right, but I don't think that the escorting is the key issue. The fact that he's going to be returned, because this involved a large sum of money, because it was a well-publicized case, because Mr. Koyemejin is a Christian going back to a very strong Muslim country, because of the problems that Syria is having in Lebanon today. I mean, there's just too many coincidences that are going to put him in a very bad situation should he be returned. Is there anything that the government could provide in the way of assurances about what they would in fact do? I mean, one of the things that's tricky about this record is why are we talking in generalities? Why couldn't some specific arrangements be made about how they would in fact handle this return? Has anybody ever discussed that? No one's ever discussed it. I think that question is probably best asked of the government as opposed to me. But quite frankly, I don't think that there is any assurances that can be given to Mr. Koyemejin if he's returned. And I think his estoppel argument is a very strong one. But the trouble with the estoppel argument is, I mean, do you have any precedent for an estoppel where the record isn't extraordinarily vague, but all we know is that they just, assuming that what he says is true, they just never got around to finding his documents and swearing him in. We don't have any reason to think they did it on purpose or maliciously or anything else. Well, I think you versus INS directs this very well. At 534 Fed Second 1329, they say that a one-year delay, they say that in you that once an alien has gathered and supplied all relevant information and has fulfilled all requirements, agents are under a duty to accord him within a reasonable time the status to which he is entitled by law. This was an eight-year delay. The government never asked Mr. Koyemejin for one single document more than he had provided in the original time. In addition, he applied for four applications on the exact same date, the exact five years after he came in. But if it was, for all we know, they just put it in the wrong drawer and lost it. Would that be something they can get a stop on? But eight years? I mean, I think that's an undue delay. Well, maybe an undue delay, but the question is whether it would set up an estoppel or not. Well, I would think so. You also went on and said that since deportation is a drastic measure that may inflict the equivalent of banishment or exile and result in the loss of all that makes life worth living, immigration officials must be held to the highest standards in the diligent performance of their duties. I would hardly say that an eight- to nine-year delay is the highest standard. Was Hugh an estoppel case? Pardon me? Was Hugh an estoppel case? Hugh was an estoppel case. Also, it was cited again in Morgan v. Gonzalez, which is a 2007 case. And it said, INS delay can amount to affirmative misconduct when the INS had a clear duty to act and it's not acting deprived the alien of a right to relief. What more could be said? Where is the clear duty to act? You know, when you apply for any kind of relief from the Immigration Service Wait. He applied to become a citizen.  That's different than, for example, asking for a hearing under a statute. Where's the duty, the mandatory duty on the government to act within a particular time on an application for naturalization? Okay. When you apply for any form of relief, there is no time frame. When you apply for citizenship, there is a provision which says that after 120 days from your interview, you have the right to have a U.S. district judge decide the case. It's the only application that can be made in this field that does have that. But he didn't do that. No, he didn't do that. And so if that's what the statute gives him as a remedy, why isn't that his sole remedy and not estoppel sometime later when it seems like a good idea? When he wasn't sworn in, he made inquiries on his own behalf. After those inquiries provided nothing, he then hired an attorney who made inquiries on his behalf. He was informed by the Immigration and Naturalization Service at that time that his file had been lost but found and that he would be sworn in within a brief period of time. And he kept waiting. The problem was he did everything that he could short of filing a writ of mandamus to force the government into swearing him in. But does a person have to file a writ to have his rights protected? It seems to me that he did everything he was entitled to do, he was required to do. He never was required for one single piece of evidence that he didn't supply. His case was eventually approved as if it should have been within the 120 days. His children were sworn in within the 120 days. Why should he be punished? Counsel, oh, I'm sorry. I was going to say you just have about a minute left if you wanted to say. I was just going to mention that the government argues that there's no proof that any of this happened at all. But, in fact, there was testimony. Yes. But you didn't submit any documents, which is a lie. There's no documents to submit, ma'am. Well, you must have a document that he submitted to become a citizen to prove that he actually submitted them. Well, the government should have the proof of when he was given the swearing in ceremony. I see. Okay. That would be the only thing we would have. Thank you. You have about half a minute when rebuttal time comes. We'll hear now from the government. Good morning, Your Honors. Thank you. Jeffrey L. Mencken, United States Department of Justice, appearing for the Attorney General. May it please the Court. Your Honor, I think there's one principal issue before the Court, and that is the one that was identified by Judge Graber, and that is the burden of proof matter. Does this record compel reversal of the administrative filing? Well, all right. So the record consists, as relevant to the question of whether he's subject to torture when he returns to Syria, as I see it, of three things. A country report would certainly suggest that there's a lot of torture in Syria, and specifically mentions the problem of people coming back to the country who have been deported getting arrested, which is unusual. I haven't seen that in a country report before. Second of all, the expert that he presented, who's a professor of Middle Eastern history, and then the DHS person. The USC expert gave very specific testimony about what's to be expected in Syria. The DHS officer had never dealt with Syria. And his testimony about what happens is all filtered through with normally and usually and most of the time and so on. There's nothing that was dealt specifically with Syria and nothing that created any assurance that something else wouldn't happen instead. Is that accurate? I would disagree with some of that, Your Honor. The expert or the INS agent did testify about one removal to Syria where a person was escorted. He said that he doesn't believe that somebody convicted of money laundering would require escort. But he didn't know. He specifically said he didn't know. I think he wasn't certain. So, yes, he didn't know. And that's a failure of proof. The burden at all times is on the alien. If the evidence is subject to more than one reasonable interpretation. But he had very strong evidence that he, going there quite aside from the escort, that they would find who he was and that he would be tortured. And then the opposing testimony from the government doesn't seem to meet it. I mean, it doesn't seem to be contradicting, actually, what Mr. Dechmegian said. It seemed to be about something else and it wasn't very specific at all to Syria. Well, I think the findings of the immigration judge are very specific as to what Syria would be told and what it wouldn't be told. But that testimony, that finding, if it was one, doesn't seem to be consistent with the evidence because the evidence was much vaguer than that. And presented with vague evidence, that means that the burden of proof has not been met. No, but it means the findings that the Syrians wouldn't be told X, if that's a finding, really can't be, isn't based on substantial evidence because the DHHS person wasn't giving any definite representations about almost anything, just normally, usually, most of the time, he didn't know about Syria, et cetera. Well, I think we're switching the burden, Your Honor. It's not up to the government to prove that they wouldn't be told. It's up to the burden of the applicant is to present that he would. But even if we assume that they would somehow find out about a conviction that took place in 1993 on conduct that ended in the late 1980s, there is not – Well, first of all, they're going to want to know what the guy's doing there. He's been a permanent resident alien of the United States for 29 years. It's pretty sure that he's only getting deported because he did something quite wrong. Well, and he, of course, has been convicted of a criminal offense. But let's take that as an assumption and move to the second step. There's no evidence here that compels the conclusion, that absolutely mandates the conclusion, which is the burden here under the Supreme Court standards, that Mr. Koyemejian is more likely than not to be tortured. The fact that torture occurs in a country does not create a per se rule that nobody can be sent there. There's no evidence at all that Mr. Koyemejian would be subject to – is more than likely than not to be subject to torture or that someone in this situation is. The fact that – it was said before, there's a series of assumptions that may happen. It could happen. It could possibly happen. That's not the burden. But that's not what he said. The expert said it was 99 percent sure that it would happen. The expert said a great deal of things, that he would be tortured because he was a jeweler, that he would be tortured because he was a Christian, that he would be tortured because he didn't serve the military. He specifically said he wouldn't be tortured because he was a Christian, actually. And I don't remember him saying – he seemed to me to be quite measured, and I don't remember him saying he would be tortured because he was a jeweler. He said some of these other things could cause a problem, but the one thing that would definitely cause a problem was that he was convicted of being a drug dealer in the United States, and they would find that out. But he wasn't convicted of being a drug dealer in the United States. There's a series of suppositions, speculative suppositions, that need to fall into place, and that is not simply the burden here under the Elias Zacharias standard, that the evidence compels the opposite conclusion than that found by the immigration judge. That is just simply not met here. We're not here reevaluating this and seeing if, well, the very same evidence, I might think differently. That simply is not the burden here. That is not the standard here. That it could be or it might be or that it's possible is not compelled to conclusion. And there's no showing at all, Your Honors, that criminal conduct 20 years ago in the United States is subject to prosecution in Syria. There's absolutely nothing there. The theory that was presented – Wait a minute. There is – there's the expert. Now, you're saying that he could be disbelieved, but he did say that. He said that the person would be, if they knew it, would be detained and arrested. He didn't say that? What he said was – there's absolutely – there's not even a – He said he would be detained. Yes. He said he would be detained, but then what did he say? In your view, what is compelled to follow from that? Well, there's also evidence that the INS agent talked about bringing somebody back to Syria or escorting somebody back to Syria who was detained and then released. So being detained means nothing other than he will be processed. He may be questioned. That is all. To say that he's going to be processed and questioned equates to showing that compels a finding of torture is to leap over a chasm that is just not justified in this record. Well, he did testify that in his mind detention equals torture. I'm not sure he used the word equals, but there's a sequence where the expert says, I can bet on the – I would bet on the fact that he'd be detained, and in Syria just being detained is the same thing as being tortured. But tortured for what, Your Honor? For the sport of it, for the heck of it? There's no – Well, he did seem to say that anybody who was detained would be tortured, that that's just what happens to people who are detained. Then that's just overbroad. There needs to be some sort of nexus to the situation of Mr. Koyemev. What about the fact that the country report says that people who are deported are often prosecuted? I don't believe the country report says that. It says that they may be subject – that they may be prosecuted, but it doesn't say that they will. It doesn't say that they will be tortured. Every person deported to the country of Syria – But that's at least some corroboration of what the expert said, the fact that that's sitting in a country report, which is at least fairly unusual. It says – My reading of the country report was, Your Honor, that criminal deportees may be prosecuted, may – The authorities may prosecute any person found attempting to immigrate or travel abroad illegally or who has been deported from another country or is suspected of having visited Israel. May be prosecuted. Okay, but that's some corroboration of the expert's testimony. It means he's not speaking nonsense. Well, I never meant to say that he's speaking nonsense, but the idea that he may be arrested – even Petitioner's brief says he may be arrested and assuming he's arrested and if he is arrested. That, standing here in this room now, is not meeting his burden of showing that the record compels a showing that this is going to happen or that this is more likely than not to happen. Your Honor, Judge Graber hit it on the head that this is a burden of proof case and the burden is not met. Now, as far as the government being stopped into making Mr. Koyemejian a citizen, I think that doesn't really require much discussion, other than to say that Mr. Koyemejian absolutely sat on whatever rights he may claim to have had. He made – I found one inquiry. Counsel says there were two. Fine. Over the course of eight years, there were two inquiries. Could I ask you a question? We've had some interesting opportunities in recent years to have cases not of this particular kind, but cases in this general field of law of immigration mediated. And what I was curious about is whether there wasn't – since all of the evidence about torture is about Syria, has there been any effort to identify another country to which he could be deported that would take him where he would not himself argue that he would be tortured? Lebanon or some other country in that part of the world? Is there anybody who would take him? I come to this matter late, Your Honor, and I apologize. I don't have any information in that regard. I can look into that. And similarly, or somewhat similarly, I mean, it strikes me that there is a lot of very vague testimony about what would happen, but it would seem relatively simple for the government to just simply make assurances about what would happen. Is there any reason to – that mediation might help in that regard? I mean, why are we dealing with possibilities? You could be very specific and clear about it. Well, I have no information to get on that, Your Honor, but I would point out that Mr. Koyemedjian's whole thing was to try and keep the government of Syria from learning of him, and I think that to seek assurances would not be furthering that. Not assurances from Syria. Assurances from the United States that when you deported him, you would do X, Y, and Z instead of normally, sometimes, usually, most of the time, et cetera. That is, send him at a time when it wouldn't be – he wouldn't be escorted or they wouldn't know when he was arriving. And the documentation wouldn't have his conviction and so on and so on. I think that could be arranged. I don't believe that requires any direction of the court. That's something that the DHS can do on its own. It can do, but no one's ever said they will do it. I can look into that, Your Honor. I'm sure that reasonable arrangements can be made. Does Syria have Google? I have no personal knowledge of that. I assume that much of the developed world does. It's right there. But, again, this is a – Mr. Qayyum Ejin's conduct was 20 years ago. His conviction was 1993. And it's serious conduct. There's no evidence, Your Honor. Pardon me. There's no evidence, Your Honor, that that is of interest to Syria, that it has reason or jurisdiction to prosecute somebody for conduct that took place 20 years ago in the United States. Zero evidence of that. The notion that this omnipresent government tortures – I just read the country report. Excuse me. I just read the country report which says that people who are deported to Syria are prosecuted. So, apparently, they do prosecute people for being deported. It says so in the country report. I think that that requires a little bit more context that if there are – there needs to be a ground to prosecute. Prosecute for what? He committed this offense 20 years ago in the United States. It doesn't say that. It says because they're deported, just like because they travel elsewhere. That's what it says. I'm afraid I didn't read it that way, Your Honor, if we disagree. But, again, my time has more than expired. If I may briefly sum up, Mr. Qayyum Ejin is not a citizen, and he cannot be considered one. He identifies no evidence on this record that compels reversal of the immigration court's decision and compels a finding that he is more likely than not to be tortured. And I would respectfully ask that this Court deny the petition. Thank you, counsel. We will hear again from Mr. Platt, who has some rebuttal time remaining. Thank you, Your Honor. There was no substantial evidence that the judge relied on in this case. Nobody has ever rebutted the testimony of Dr. Dick Meejin. He's a foremost authority. The country reports, as Judge Berzon said, is absolutely correct. They torture people for no reason. There is no human rights in Syria. The country is an axis of evil by President Bush. It's right now, but he just, less than two weeks ago, told them to stay out of Lebanon along with Iran. I believe that a man who has been convicted of money laundering, as the government says, of $200 million, will definitely be somebody that the Syrian government wants, especially as a Christian. Let me ask you the same question I asked opposing counsel. Assuming that we do not accept your arguments about estoppel and citizenship, that he is deportable, there's no evidence of torture or potential torture in other countries in that part of the world or, on this record, anywhere else. Is there any reason why he couldn't be deported to some third country? Probably because no third country would accept him. Well, that may be, but let's assume that they might. There's nothing to prevent it, correct? There's nothing to prevent it, but, again, the government would have to have a reason to get him to that third country. If you call a third country when this man has a Syrian citizenship, has been convicted of an aggravated felony by everybody's standards, and you ask a third country to take him, what reason would they have to take him? He's not a national of their country. But I think the estoppel argument is a very strong argument, especially in light of you. If you would cite it in your brief. I don't know whether to cite it in my brief. No, it is. If you supply a citation to the clerk's office before you leave the building, you can cite two cases, neither of which seems to be in your brief. Do you have the slips, Branka? You don't have them anymore? I certainly am able to give them. I'll take the paper, give it to opposing counsel, and leave it with the deputy clerk, and she'll get it to us. Absolutely. And there's a litany of cases that go along with you, and I have those cites as well. Okay. Both before or after Pagolian, the Supreme Court case? Well, Morgan is a 2007 case on estoppel. Okay. Thank you, counsel. We'd appreciate those citations. And the case just argued is submitted. Thank you. We will hear next the arguments in Barroso v. Calderon.
judges: Hall, Graber, Berzon